UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KEVIN M. PRENTICE,                      :
     Plaintiff,                       :
                                        :
v.                                      :       CA 06-385 M
                                        :
MICHAEL J. ASTRUE,[1]                   :
Commissioner,                           :
Social Security Administration,         :
     Defendant.                       :

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security, denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Kevin M. Prentice ("Plaintiff") has filed a motion for summary judgment, seeking reversal or, alternatively, remand of the Commissioner's decision. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgement in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons stated herein, I find that the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) (2008) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision that the Plaintiff is not disabled is not supported by substantial evidence in the record and not legally correct. Accordingly, I order that Plaintiff's Motion for Summary Judgment (Doc. #9) ("Motion for Summary Judgment") be granted to the extent that the matter be remanded for further administrative proceedings as outlined below and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #10) ("Motion to Affirm") be denied.

## Facts and Travel

Plaintiff was born in 1961 and was forty-three years old at the time of the hearing. (Record ("R.") at 19, 228) He has a ninth grade education and past relevant work experience as a laborer in a toy warehouse, shipper/receiver, caster, and order picker. (R. at 19, 86-93, 230-31)

On January 16, 2003, Plaintiff filed applications for DIB and SSI, alleging that he became disabled as of October 10, 2002, due to depression. (R. at 18-19, 54, 68, 214) His applications were denied initially and upon reconsideration, (R. at 18, 26, 27, 32, 217, 218), and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), (R. at 18, 36). A hearing was conducted on November 15, 2004, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. at 18, 224-51) The ALJ issued a decision on June 1, 2005, finding that Plaintiff was not disabled. (R. at 18-24) The Appeals Council denied plaintiff's request for review on June 29, 2005, (R. at 6-8, 14), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 6). Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown v. Apfel, 71 F.Supp.2d at 30 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (d.R.I. 1999)(quoting Richardson).

[3] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through the date of his decision.  (R. at 19, 23)

application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. §§ 404.1521(a), 416.921(a) (2007).[5] A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

[5] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite only to one set of regulations. See id.

(1st Cir. 1986); 20 C.F.R. § 404.1528 (2007)("Your statements alone are not enough to establish that there is a physical or mental impairment."); 20 C.F.R. § 404.1528 (2007) (same).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 5. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in any substantial gainful activity since the alleged onset of his disability; that his depression and anxiety were "severe" within the meaning of the Regulations; that his claimed impairments did not meet or medically equal a listed impairment; that his allegations regarding his limitations were not totally credible; that he retained the residual functional capacity

5

("RFC") to perform a wide range of work with moderate reduction in his ability to maintain attention and concentration and to deal appropriately with the public, co-workers, and supervisors; that he could perform his past relevant work as a warehouse laborer; that, even if he were not able to perform his past relevant work, there existed in the regional and national economy a significant number of jobs which Plaintiff could perform, including such work as a night stock clerk, night janitor, assembler, inspector, or packer; and that, therefore, Plaintiff was not disabled within the meaning of the Act.  (R. at 23-24)

### Claimed Errors

Here, Plaintiff alleges that: 1) the ALJ's decision to deny Plaintiff benefits is not supported by substantial evidence in the record, see Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 13; and 2) the ALJ's method of judging Plaintiff's credibility does not meet the requirements of Social Security Ruling ("SSR") 96-7p, see id. at 15.

### Discussion

**I. The ALJ's finding that Plaintiff was not disabled**

The ALJ found that Plaintiff had the residual functional capacity to perform a wide range of work with moderate reduction in his ability to maintain attention and concentration and to deal appropriately with the public, co-workers, and supervisors. (R. at 22, 23)  Plaintiff challenges this assessment, contending that:

> The ALJ reject[ed] the opinions of ... Dr. Hogan, the plaintiff's treating physician[,] and Drs. Schwartz and Sparadeo with respect to their conclusions regarding the plaintiff's functional limitations despite the fact that their conclusions are uncontroverted in the record and are entirely consistent with each other with respect to diagnosis and degree of functional limitation.  The ALJ instead applie[d] his own lay estimation of the

6

plaintiff's limitations lacking entirely [a] valid expert opinion to s

Plaintiff's Mem. at 13-14.  The Court is constrained to agree with the latter statement.

The medical evidence pertaining to Plaintiff's mental impairments begins with a treatment note from Notre Dame Ambulatory Services dated September 25, 1996, in which it was noted that Plaintiff "need[ed] psychiatric[.]"  (R. at 112)  It was further noted that he had been referred to Butler Hospital and given the number for Community Counseling.  (Id.)

There is no further evidence regarding Plaintiff's mental health issues until May 14, 2003, when he was seen by Wendy Schwartz, Ph.D., for a consultative evaluation at the request of Disability Determination Services ("DDS").  (R. at 143-47)  Dr. Schwartz diagnosed Plaintiff with panic disorder with agoraphobia and major depressive disorder, recurrent, moderate to severe, without psychosis.  (R. at 146)  Regarding Plaintiff's limitations, she opined that:

> Overall, this patient's functional limitations are due primarily to emotional issues.  He is able to understand and follow directions without any significant impairments due to concentration or intellectual defects. However, occupationally, his ability to respond appropriately to customary work pressures, his colleagues and his supervisors appears to be moderately to severely impaired.  Socially, the patient is moderately to severely impaired.  There is a severe constriction of interest.

(Id.)

Jane S. Marks, M.D., a non-examinining physician, reviewed the medical evidence of record, (R. at 148-61), which consisted at that point of only Dr. Schwartz's evaluation and Plaintiff's statement of Activities of Daily Living ("ADLs"), (R. at 160), for DDS and found that Plaintiff's impairments were severe but were not expected to last twelve months, (R. at 148, 160).  She

did not complete the Psychiatric Review Technique form ("PRTF") beyond the first page and Consultant's Notes section.  (R. at 148-61)

Plaintiff was next seen by John P. Parsons, Ph.D., for another consultative examination at the request of DDS.  (R. at 163-70)  Dr. Parsons diagnosed Plaintiff with rule out anxiety disorder, not otherwise specified, and rule out depressive disorder, not otherwise specified, and alcohol dependence.[6]  (R. at 170)  Dr. Parsons noted that Plaintiff's response pattern on the Beck Anxiety Inventory was indicative of moderate problems with this emotional state and that his response pattern on the Beck Depression Inventory indicated significant problems with this area.  (R. at 167-68)  Dr. Parsons further stated that he was "[u]nable to accurately assess," (R. at 170), Plaintiff's functioning.  Dr. Parsons did not complete a PRTF or a Mental Residual Functional Capacity Assessment.  (R. at 163-70)

On reconsideration, Edwin Davidson, M.D., reviewed the medical evidence of record, (R. at 123-40), including Plaintiff's statement of ADLs and the reports of the two consultative examinations, (R. at 135).  Dr. Davidson evaluated Plaintiff under several categories, (R. at 123-32), and completed a PRTF in which he rated Plaintiff's functional limitations as moderate in the areas of restriction of ADLs, maintaining social functioning, and maintaining concentration, persistence, or pace, and found

---

[6] Dr. Parsons noted that Plaintiff "had a significant odor of alcohol on his presence."  (R. at 164)  Dr. Parsons also observed that Plaintiff's scores on the Weschler Adult Intelligence Scale, 3rd Edition were "not considered to be an accurate assessment of his functional ability."  (R. at 166)  In addition to reporting that Plaintiff made a marginal effort and had some difficulty concentrating, Dr. Parsons reiterated that Plaintiff had "had a significant odor of alcohol on his presence," (id.), and stated that "[i]t is unclear if this negatively impacted his performance," (R. at 166-67); see also (R. at 168)(questioning whether Plaintiff's difficulty concentrating and staying focused "was related to the alcohol that he consumed").

insufficient evidence of episodes of decompensation, (R. at 133). Dr. Davidson also completed a Mental Residual Functional Capacity Assessment in which he found Plaintiff to be markedly limited in his ability to understand, remember, and carry out detailed instructions, moderately limited in seven areas, and not significantly limited in eleven areas.  (R. at 137-38)  In his written assessment of Plaintiff's functional capacity, Dr. Davidson opined that Plaintiff "would be capable of simple tasks in an unpressured setting," (R. at 139), that "[h]e should not be dealing with the public, but could function otherwise in an unpressured setting," (id.), and that "he would need to work in a familiar setting," (R. at 140).

Plaintiff began seeing Dawn Hogan, M.D., at Notre Dame Ambulatory Services on September 17, 2004, for his depression and anxiety.[7]  (R. at 195)  She diagnosed him with anxiety and depression and prescribed Paxil and Trazodone.  (Id.)  Dr. Hogan completed a form, dated September 18, 2004, for the R.I. Department of Human Services in which she indicated that Plaintiff's prognosis for eliminating or reducing his mental health conditions through medication or other treatment was "good," (R. at 196), but also stated that Plaintiff "appears to be currently significantly immobilized and debilitated by his anxiety/depressive disorder. He would benefit from short term disability benefits to get his condition under control with medication and counseling," (R. at 197).  Plaintiff returned for a follow-up visit on October 14 or 15, 2004.  (R. at 200-01) According to Dr. Hogan's notes, Plaintiff reported feeling "about same as last visit ...."  (R. at 200)  She continued him on Paxil and added Valium, (id.), and noted "dispo[sition] - temp[orary]

---

[7] Plaintiff testified at the November 15, 2004, hearing that Dr. Hogan was his primary care physician.  (R. at 233)  The ALJ noted that she was not a specialist in mental health problems.  (R. at 20, 233)

9

disability," (R. at 201). Dr. Hogan completed an Emotional Impairment Questionnaire and Supplemental Questionnaire as to Residual Functional Capacity on October 25, 2004. (R. at 202-05) She listed his diagnoses as social anxiety disorder and major depressive disorder, his medications as Paxil and Valium, and his symptoms as anorexia, insomnia, anhedonia, suidical ideation, social avoidance, and agoraphobia. (R. at 202) Dr. Hogan rated Plaintiff's symptoms as severe, (id.), and indicated that he could not sustain competitive employment on a full-time, ongoing basis, (R. at 203). She opined that "[c]urrently [Plaintiff] is incapacitated by his psychological disorders. Once a therapeutic regimen has been established and [he] has undergone counseling he could theoretically sustain full-time employment." (R. at 203) Regarding Plaintiff's residual functional capacity, Dr. Hogan estimated the degree of impairment of Plaintiff's ability to relate to other people, restriction of social functioning, and constriction of interests as "severe." (R. at 204) She rated the limitations in Plaintiff's ability to respond to supervision and co-workers as moderately severe and described as moderate the restriction in Plaintiff's ADLs, deterioration in his personal habits, and limitation of his ability to attend and concentrate in a work setting and respond to customary work pressures. (Id.) Dr. Hogan noted mild litations in Plaintiff's ability to understand, carry out, and remember instructions. (Id.)

In late October and early November of 2004, Plaintiff was evaluated by Francis Sparadeo, Ph.D., at the request of his attormey. (R. at 206-12) Dr. Sparadeo diagnosed Plaintiff with major depression, generalized anxiety disorder–severe, and social phobia, with a GAF[8] of 45. (R. at 210) The psychologist noted

---

[8] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley

that Plaintiff's score on the Beck Depression Inventory was consistent with major depression and that on the Beck Anxiety Inventory he endorsed ten symptoms as occuring at the severe level. (R. at 208)  Dr. Sparadeo concluded that:

> The present psychological evaluation indicates [Plaintiff] is in the midst of a severe mental illness that consists of debilitating anxiety and major depression.  The basis of [his] history of drinking is the presence of a severe primary anxiety disorder that he has controlled in the past with alcohol.  Presently, he is controlling his anxiety somewhat with Paxil and Trazodone.  In addition to the severe generalized anxiety [Plaintiff] also experiences significant depression that is characterized by sadness, pessimism, self-dislike, self-criticism, and suicidal ideation.
>
> In my opinion, within a reasonable degree of psychological certainty, [Plaintiff] is unable to work at any level due to the presence of severe mental illness characterized by excessive anxiety and also depression.

(R. at 209-10)

As noted above, Plaintiff argues that the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Hogan, and two examining psychologists, Drs. Schwartz and Sparadeo, regarding Plaintiff's functional limitations.  See Plaintiff's Mem. at 13-14.  The ALJ stated that:

> Dr. Hogan found the claimant to be significantly immobilized and debilitated by anxiety and depression based on her evaluation of the claimant on September 17, 2004.  However, she only found him temporarily disabled and gave a good prognosis with medication in an

---

v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM-IV-TR at 34.  A GAF score between 41-50 is indicative of "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  Id.

> assessment of his impairment for the Rhode Island Department of Human Services on September 18, 2004.
>
> The undersigned has also considered the psychological evaluation of Dr. Sparadeo on October 29 and November 14, 2004[,] and the functional assessment based on that evaluation, and the functional assessments of Drs. Schwartz and Hogan on May 14, 2003[,] and October 25, 2004[,] respectively, and finds none of them probative in this case. Dr. Sparadeo performed a very cursory mental status examination of the claimant and relied primarily on his subjective complaints in assessing the severity of his impairments. It is further noted that Dr. Sparadeo completed his evaluation and assessment of the claimant at the request of his attorney for the sole purpose of producing evidence infavor of his disability claim. As such, it should be considered biased in the claimant's behalf, and not a valid appraisal of the claimant's limitations. Dr. Schwartz' conclusions are clearly not supported by her mental status examination of the claimant .... Similarly, Dr. Hogan's findings are inconsistent with her assessment of the claimant on September 18, 2004[,] in which she gave him a good prognosis.

(R. at 21)(internal citations and footnote omitted).

The ALJ thereafter reached his conclusion regarding Plaintiff's functional capacity, that Plaintiff was capable of performng a "wide range of work with moderate reduction in the ability to maintain attention and concentration and deal appropriately with the public, co-workers and supervisors." (R. at 22)  The ALJ stated that this finding was "consistent with the evaluations of Drs. Schwartz and Parsons on May 14 and October 2, 2003[,] and the assessment of Dr. Hogan on September 18, 2004." (Id.)

It is unclear to the Court how the ALJ found that his RFC determination was "consistent with" the evaluation of Dr. Schwartz of May 14, 2003, (R. at 22), when a page earlier in his decision the ALJ had rejected that functional assessment as not "probative," (R. at 21). Although an ALJ is not required to accept a medical source opinion in its entirety, cf. SSR 96-2p,

1996 WL 374188, at *2 (S.S.A.)(noting, in context of treating source opinions, that it is not unusual for a single source to provide medical opinions about several issues), it behooved the ALJ in the instant matter to explain the apparent discrepancy between his finding that "Dr. Schwartz' conclusions are clearly not supported by her mental status examination of the claimant ...," (R. at 21), and, therefore, were not "probative," (id.), and his statement that his RFC assessment was "consistent with," (R. at 22), her evaluation.

As for whether the ALJ's RFC finding was "consistent with" the evaluation of Dr. Parsons, the ALJ stated that "Dr. Parsons noted difficulty in concentrating and staying focused in his examination of the claimant on October 2, 2003. However, he found the claimant's attention and concentration spans to be only mildly impaired." (R. at 20) While this statement reflects observations in Dr. Parsons' report, Dr. Parsons specifically indicated that he was "[u]nable to accurately assess," (R. at 170), Plaintiff's functioning. Moreover, Dr. Parsons did not complete an RFC assessment or PRTF. (R. at 163-70)

The ALJ does not state that he relied on the findings of the DDS reviewing physicians.[9] That leaves the ALJ's reliance on Dr. Hogan's opinion of September 18, 2004, that Plaintiff had a "good" prognosis with medication and treatment, (R. at 196), which, as noted previously, is at odds with her statements that Plaintiff "appears to be currently significantly immobilized by his anxiety/depressive disorder," (R. at 197), that he was "[c]urrently ... incapacitated by his psychological disorders," (R. at 203), that his sympoms were severe and he was unable to

---

[9] It is worth noting that neither of the DDS physicians saw Dr. Hogan's reports of September 17, 2004, and October 25, 2005, (R. at 196-99, 202-03), and Dr. Sparadeo's report of November 11, 2004, (R. at 206-12).

13

sustain competitive employment on an ongoing basis, (R. at 202-03), and that he could "theoretically" sustain full-time employment once a treatment regimen, including counseling, had been established, (R. at 203).

Although the ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, see Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts"), as a lay person he is not permitted "to interpret raw medical data in functional terms ...," Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991)("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on the bare medical record."); Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)(same). "Rather, an explanation of claimant's functional capacity from a doctor is needed." Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 7 (1st Cir. 1988); see also Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").

Here, the Court cannot say that the extent of functional loss due to Plaintiff's anxiety and depression, and its effect on Plaintiff's job performance, is readily apparent. See Manso-Pizarro, 76 F.3d at 17. Thus, because no RFC assessment from an expert supports the ALJ's RFC findings, save the single "good" prognosis from Dr. Hogan, (R. at 196), and no medical expert testified at the hearing, (R. at 224-51), the Court cannot

conclude that the ALJ's RFC determination is supported by substantial evidence in the record. Accordingly, the matter must be remanded for further assessment of Plaintiff's RFC and evaluation of the complete medical record by a qualified physician. Cf. Nguyen v. Chater, 172 F.3d at 36 (on remand, directing ALJ to "obtain[] any expert medical opinion needed to illuminate the medical records").

## II.  The ALJ's evaluation of Plaintiff's credibility

The ALJ found Plaintiff's allegations regarding his limitations not totally credible. (R. at 23) Plaintiff challenges the method by which the ALJ arrived at his conclusion,[10] see Plaintiff's Mem. at 15, alleging that his findings are "inconsistent with the requirements of Social Security Ruling 96-7p," id. The Court has reviewed the entire record and finds the ALJ's credibility determination–and the reasons given in support thereof–is supported by substantial evidence. This claim of error by Plaintiff is, therefore, rejected.

### Summary

The Court finds that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence and is not legally correct. Therefore, the matter must be remanded for further administrative proceedings consistent with this Memorandum and Order. On remand, Plaintiff's complete medical record is to be reviewed by a qualified medical expert. Tne Court finds that the ALJ's credibility finding is supported by substantial evidence in the record.

### Conclusion

For the reasons stated herein, I find that the

---

[10] Plaintiff also challenges the ALJ's credibility finding substantively, in the context of his argument regarding the ALJ's RFC determination. See Plaintiff's Mem. at 13-14.

Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence and is not legally correct. Therefore, I order that the Motion for Summary Judgment be granted to the extent that the matter be remanded for further administrative proceedings.  I further order that the Motion to Affirm be denied.

So ordered.

ENTER:


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 31, 2008